# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| MICHELE LOUISE COSGROVE,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>Defendant. | NO. C11-885-JLR-JPD<br><br>REPORT AND RECOMMENDATION |

Plaintiff Michele Louise Cosgrove appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied her applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-33, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be reversed and remanded for further proceedings.

## I. FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, Plaintiff was a 43 year old woman with a high school education and a Novell technology certificate. Administrative Record ("AR") at 22, 277. Her past work experience includes employment as a network control supervisor and

REPORT AND RECOMMENDATION - 1

as a display fabricator. AR at 21. Plaintiff was last gainfully employed in December 2000. AR at 178.

On February 28, 2006, Plaintiff filed an application for DIB, alleging an onset date of August 5, 2002. AR at 14. Plaintiff asserts that she is disabled due to seizures, fractured skull, short-term memory loss, depression, and Restless Leg Syndrome ("RLS"). AR at 96.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 96-98, 101-102. Plaintiff requested a hearing which took place on March 20, 2009. AR at 34. On September 1, 2009, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on her finding that plaintiff could perform a specific job existing in significant numbers in the national economy. AR at 31. Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 3-5, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On May 26, 2011, Plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. No. 1.

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750

(9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV. EVALUATING DISABILITY

As the claimant, Ms. Cosgrove bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age,

education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V. DECISION BELOW

On September 1, 2009, the ALJ issued a decision finding the following:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2006.

2. The claimant has not engaged in substantial gainful activity since August 5, 2002, the alleged onset date.

3. The claimant has the following severe impairments: seizure disorder, status post head injury; depression; restless leg syndrome; sleep apnea; alcohol dependence, and a possible amnestic disorder.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that, based on all of the impairments, including the substance use disorder, the claimant has a residual functional capacity without exertional limitations to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant cannot climb ladders, ropes or scaffolds, work around heights, machinery or other hazards, and is limited to simple, routine work without public contact. The claimant also requires accommodations to learn by direction. The claimant cannot sustain an 8-hour workday or 40-hour workweek.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on XXXXX, 1966 and was 36 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.[2]

8. The claimant has at least a high school education and is able to communicate in English.

9. The claimant's acquired job skills do not transfer to other occupations within the residual functional capacity defined above.

10. Considering the claimant's age, education, work experience, and residual functional capacity, based on all of the impairments, including the substance use disorder, there are no jobs that exist in significant numbers in the national economy that the claimant can perform.

11. If the claimant stopped the substance use, the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant would continue to have a severe impairment or combination of impairments.

12. If the claimant stopped the substance use, the claimant would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1.

13. If the claimant stopped the substance use, the claimant has a residual functional capacity without exertional imitations to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant cannot climb ladders, ropes or scaffolds, work around heights, machinery or other hazards, and is limited to simple, routine work without public contact. The claimant also requires accommodations to learn by direction.

14. If the claimant stopped the substance use, the claimant would continue to be unable to perform past relevant work.

15. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

16. If the claimant stopped the substance use, considering the claimant's age, education, work experience, and residual functional capacity, there would be a significant number of jobs in the national economy that the claimant could perform.

---

[2] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

REPORT AND RECOMMENDATION - 6

17. Because the claimant would not be disabled if she stopped the substance use, the claimant's substance use disorder is a contributing factor material to the determination of disability. Thus, the claimant has not been disabled within the meaning of the Social Security Act, at any time from the alleged onset date through the date of this decision.

AR at 16-31.

## VI. ISSUES ON APPEAL

The principal issues on appeal are:

1. Did the ALJ err at step two of the sequential evaluation by failing to find plaintiff's dementia to be a severe impairment as found by examining physician Dr. Rodger Meinz and state agency consultants from Disability Determination Services (hereafter "DDS")?

2. Did the ALJ fail in fully developing the record by failing to obtain necessary testimony from a qualified medical expert before determining that substance abuse was a material factor contributing to her disability?

3. Did the ALJ err by rejecting the medical opinion evidence of Dr. Meinz?

4. Did the ALJ err by failing to reduce plaintiff's limitation in "staying on task" to vocationally relevant terms for the vocational expert?

Dkt. No. 11 at 1 & 9.

## VII. DISCUSSION

A. <u>The ALJ Erred at Step Two of the Sequential Evaluation</u>

Plaintiff argues that the ALJ erred in failing to address the dementia diagnoses of Drs. Rodger Meinz, David Jarvis, Cynthia Collinwood, and Kristine Harrison. The portion of the ALJ's decision identifying the Plaintiff's severe impairments does not mention dementia at all. *See* AR at 17. The ALJ expressly declined to consider the report of one of the providers (Dr. Harrison) who had recorded a dementia diagnosis, but the ALJ rejected the opinion only because it "relied on an incorrect date last insured for analyzing the claimant's allegations." AR at 29. Plaintiff argues that the ALJ erred in not referencing Plaintiff's multiple dementia

REPORT AND RECOMMENDATION - 7

diagnoses in the step two analysis, and also erred in rejecting Dr. Harrison's opinion in its entirety.

### 1. *Step Two*

Step two of the sequential evaluation process requires a claimant to prove that he has a severe impairment or combination of impairments. 20 C.F.R. § 404.1520(c), 416.920(c). An impairment is severe if it significantly limits the plaintiff's ability to perform basic work activities.[3] 20 C.F.R. § 404.1521(a), 416.921(a). When an impairment or combination of impairments consist of no more than a slight abnormality that have only a minimal effect on an individual's ability to work, a finding of non-severe is appropriate. *Smolen,* 80 F.3d at 1290 (internal citations omitted); *see also* SSR 96-3p, at *1. Hence, step two acts as a "*de minimis* screening device to dispose of groundless claims." *Id.* Plaintiff has the burden of proving that her "impairments or their symptoms affect [his] ability to perform basic work activities." *Edlund v. Massanari,* 253 F.3d 1152, 1159-60 (9th Cir. 2001); *Tidwell v. Apfel,* 161 F.3d 599, 601 (9th Cir. 1998).

### 2. *Dementia*

After evaluating her on May 17, 2005, Dr. Meinz diagnosed Plaintiff with, *inter alia*, dementia due to head trauma. *See* AR at 340. Dr. Harrison and Dr. Collingwood, State agency psychologists, both opined that Plaintiff had, *inter alia*, the medically determinable impairment of "history of dementia secondary to head injury and seizures." *See* AR at 457, 565. Nonetheless, the ALJ's decision does not mention the dementia diagnoses at all in the section addressing Plaintiff's impairments, but instead lists Plaintiff's impairments as "seizure

---

[3] Basic work activities include the abilities and aptitudes necessary to do most jobs including walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, understanding, carrying out and remembering simple instructions, and dealing with changes in a routine work setting. *See* 20 C.F.R. §§ 404.1521(b), 416.921(b).

disorder, status post head injury; depression; restless leg syndrome; sleep apnea; alcohol dependence, and a possible amnestic disorder[.]" *See* AR at 17. Plaintiff argues that the ALJ's failure to list dementia among the list of her severe impairments was error, because dementia "by definition carries with it the attendant limitation of severe cognitive impairments." Pltf.'s Reply (Dkt. 15) at 3.

According to the Defendant, the ALJ's failure to list dementia in the list of Plaintiff's severe impairments is harmless, because the ALJ properly considered the limitations imposed by Plaintiff's dementia at other steps of the sequential process. The Defendant argues that "The ALJ accommodated Plaintiff's mental impairments by limiting her to simple, routine work that could be learned by demonstration rather than by auditory instructions to account for her short-term memory loss." Def.'s Opp'n at 14:15-17.

But by the ALJ's own language, it was only Plaintiff's "short-term memory loss" that was accommodated by limiting Plaintiff to simple, routine work that could be learned by demonstration. Given that the ALJ's decision does not reference dementia at all, and does not explain why the multiple, uncontradicted diagnoses of dementia in the record were not credited by the ALJ, the Court agrees with Plaintiff that the ALJ erred in not articulating specific and legitimate reasons for rejecting Plaintiff's diagnoses of dementia. *See Bayliss v. Barnhart*, 427 427 F.3d 1211, 1216 (9th Cir. 2005).

Thus, the Court finds that the ALJ erred at step two, in not explaining the omission of dementia from the list of Plaintiff's impairments, and the Court will remand for a *de novo* hearing. On remand, the ALJ shall properly evaluate and document her analysis of Plaintiff's claim of dementia.[4] The ALJ shall also reassess Plaintiff's RFC, because the ALJ's failure to

---

[4] The Court also agrees with Plaintiff that the ALJ improperly discredited Dr. Harrison's opinion due to an erroneous date last insured listed on the report. The date Dr.

properly evaluate the medical evidence of dementia prevents the Court from determining, on the record as it currently exists, whether the ALJ's RFC assessment is adequate.

### B. The ALJ Did Not Err in Evaluating the Medical Expert Testimony of Lew B. Myers, M.D.

Neurologist Lew B. Myers testified at Plaintiff's hearing at the ALJ's request and testified, *inter alia*, that Plaintiff's depression was significant enough to meet a listed impairment. The ALJ accorded great weight to Dr. Myers' opinion regarding Plaintiff's seizure disorder, but rejected his opinion regarding Plaintiff's depression:

> As for the opinion evidence, [Dr. Myers'] testimony concerning the materiality of the claimant's substance abuse to the claimant's functionality in terms of the seizure disorder is given great weight and adopted. The opinion is well supported by the evidence of record and the medical expert's expertise. However, his testimony that the claimant's depression was significant enough to meet a [listing] is rejected. This opinion is beyond his expertise and [] entirely inconsistent with the record, the opinions of the State agency psychologists, and other examining psychologists and psychiatrists. The medical expert's lack of familiarity with listings analysis of mental impairments is eviden[t] in his assessment that the claimant had marked restrictions in all domains of the B criteria in such a case where the claimant is able to care for a family and get along with others.

AR at 27-28.

According to Plaintiff, the ALJ should have called a medical expert qualified to testify about Plaintiff's depressive disorder, and because Dr. Myers was not qualified to do so, the ALJ failed to fully develop the record.

The Court disagrees with Plaintiff's argument. The ALJ is obligated to supplement the record with medical testimony if the evidence is ambiguous, if the ALJ finds that the record is inadequate, or if the ALJ relies on an expert opinion that the evidence is ambiguous. *See Webb*

---

Harrison cited was four months prior to the correct date, and the ALJ failed to explain why the fact that Dr. Harrison considered a slightly too-long window of time would render her entire opinion useless. Thus, on remand, the ALJ shall consider Dr. Harrison's report for any relevant purpose.

*v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005). The ALJ called Dr. Myers to testify about Plaintiff's seizure disorder, which was a neurological topic within his area of expertise as a neurologist. *See* AR at 40-41 (describing Dr. Myers' qualifications). Though the ALJ allowed Dr. Myers to also opine regarding Plaintiff's depression in response to questions from Plaintiff's attorney, Dr. Myers warned at the beginning of that testimony that "I am not a psychiatrist, but . . ." AR at 56. Thus, the transcript of the hearing does not suggest that the ALJ called Dr. Myers in order to solicit his evaluation of the severity of Plaintiff's depression.

Nor does the record suggest that such supplementation regarding Plaintiff's depression was necessary, given that Plaintiff's depression was evaluated by multiple providers, including Dr. Mashburn, Dr. Meinz, Dr. Jarvis, Dr. Harrison, and Dr. Collingwood. *See* AR at 28-29 (summarizing the psychological evidence in the record). Though the ALJ ultimately credited different aspects of those treating providers' opinions and discounted some of them, at no point during the hearing or in the decision did the ALJ suggest that the record was inadequate or ambiguous as to Plaintiff's depression. Thus, the Court finds that the ALJ did not err in failing to supplement the record regarding Plaintiff's depression. *See Mayes v. Massanari*, 276 F.3d 452, 456 (9th Cir. 2001) (the ALJ's "duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence").

    C.    <u>The ALJ Did Not Err in Rejecting the Medical Opinion Evidence of Rodger Meinz, Ph.D.</u>

Plaintiff contends that the ALJ erred in discounting the opinion of Dr. Meinz, who evaluated Plaintiff in May 2005 to assess her short-term memory loss related to her seizure disorder. Dr. Meinz opined:

> Clearly, Ms. Cosgrove has marked disturbances in affective regulation that would impede her ability to absorb additional stressors of a work-related nature

REPORT AND RECOMMENDATION - 11

> without decompensating. There is also concern about her ability to remember instructions except in the most remedial of work, like unskilled manual work, which would be contraindicated, given her complaints that she is unsteady on her feet and in fact sustains falls which result in rather substantial injury not only due to falls that occur when she has a seizure but also when she just feels unsteady on her feet.

AR at 341. The ALJ discredited this particular opinion because at the time that Dr. Meinz evaluated Plaintiff, she "was not honest about the nature of her alcohol use." AR at 29. Dr. Meinz's report described Plaintiff's alcohol use as follows:

> [After her injury, Plaintiff] medicated herself with alcohol, drinking up to three or four glasses of Chardonnay a night. She did this until about six or seven months ago, when she discovered that it wasn't working. The alcohol helped her tune everything out, but it also helped her tune out her children, which she just couldn't tolerate. Her children are everything to her, she related. When asked if she was inebriated when she went to Dr. Mashburn's session, Ms. Cosgrove related that she wasn't. She adamantly denied that she ever drank before going for a doctor's visit. She has not gone through treatment. She denied that she currently uses. Her clinical report must be taken with the customary reservation, but it did seem genuine.

AR at 339. The Defendant contends that the ALJ was entitled to discount Dr. Meinz's opinion to the extent it was based Plaintiff's dishonesty. *See* Def.'s Br. (Dkt. 14) at 12.

Substantial evidence in the record suggests that Plaintiff was dishonest about her alcohol use during her evaluation with Dr. Meinz and others. In addition to Dr. Mashburn's observations of Plaintiff smelling of alcohol during his 2003 evaluation, Plaintiff was observed to have a "strong odor of alcohol on [her] breath" when she appeared in the emergency room in April 2003. AR at 370. Plaintiff minimized her drinking, which the physician found to be inconsistent with the odor. *Id.*

In January 2005, Plaintiff "denie[d] significant use of alcohol." AR at 398. In September 2005, Plaintiff told a physician that she stopped drinking six months before, and up to that point she had been drinking "a bottle of wine a day or more." AR at 390. The physician expressed some doubt as to whether Plaintiff had really been sober for six months,

REPORT AND RECOMMENDATION - 12

given her liver disease. *See id*. The next month, Plaintiff admitted to that physician that she had been drinking. *See* AR at 387.

Dr. Jarvis also suspected that Plaintiff was continuing to drink alcohol, even though she denied use during her June 2006 evaluation. *See* AR at 453. Furthermore, Plaintiff's husband testified at the hearing that before March 2006 Plaintiff drank alcohol somewhat frequently (no "dry months" in a year), and that her drinking frequency increased since 2002. AR at 80.

These conflicting self-reports of Plaintiff's alcohol use are substantial evidence to support the ALJ's limited rejection of Dr. Meinz's opinion. *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995) ("[T]he opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record."). Thus, the Court finds that the ALJ did not err in rejecting Dr. Meinz's opinion to the extent that it was based on Plaintiff's dishonest representations regarding her alcohol use.

D. <u>The ALJ Erred in Assessing Plaintiff's Limitation in "Staying on Task" as it relates to Plaintiff's RFC</u>

When analyzing whether Plaintiff's impairments (assuming no alcohol abuse) met or equaled a Listing, the ALJ analyzed *inter alia* the Paragraph B criteria, one of which is restrictions to concentration, persistence or pace:

> With regard to concentration, persistence or pace, the claimant would have moderate difficulties if the substance use was stopped. Due to the claimant's possible amnestic disorder, assessed under listing 12.02, and certain effects of the depressive disorder, the claimant's ability in this area would not be expected to improve greatly and she would still have moderate difficulties with instructions and staying on task.

AR at 23. The ALJ subsequently found that, assuming Plaintiff stopped abusing alcohol, Plaintiff would have

> a residual functional capacity without exertional limitations to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant cannot climb ladders, ropes or scaffolds, work around heights, machinery or other hazards, and is limited to simple, routine work without public contact. The claimant also requires accommodations to learn by direction.

AR at 24. The Plaintiff contends that the ALJ erred by not addressing Plaintiff's limited ability to stay on task in the RFC assessment, even though she considered it when analyzing the Paragraph B criteria. The Defendant argues that the ALJ's RFC assessment was consistent with the evidence of record, including Dr. Collingwood's opinion that Plaintiff "should be able to persist on simple tasks for two-hour periods throughout the day." AR at 580. According to Defendant, it was not necessary for the ALJ to address in her RFC assessment Plaintiff's inability to stay on task for longer than two hours because "[n]ormal workdays include breaks after two-hour periods." Def.'s Br. (Dkt. 14) at 14.

The Defendant cites no authority to support the assumption that "normal workdays" include breaks every two hours, and there is no evidence in the record that the ALJ's RFC assessment relied on that assumption. Neither does the ALJ's RFC assessment account for Plaintiff's "moderate difficulties with . . . staying on task," as the ALJ herself had found. *Compare* AR at 23 *with* AR at 24. The ALJ did not reference Plaintiff's ability to concentrate or stay on task, when asking the vocational expert about a hypothetical person with Claimant's limitations. *See* AR at 87-88. This failure is error, because "[h]ypothetical questions posed to the vocational expert must set out *all* the limitations and restrictions of the particular claimant[.]" *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988) (emphasis in original). Thus, because the ALJ found Plaintiff to have moderate limitations in staying on task, and yet did not include that limitation in her hypothetical question to the vocational expert, the ALJ's

RFC assessment is inadequate.  On remand, the ALJ shall address the Plaintiff's "staying on task" limitation when soliciting testimony from a vocational expert.

## VIII.   CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions.  A proposed order accompanies this Report and Recommendation.

DATED this 21st day of March, 2012.

JAMES P. DONOHUE
United States Magistrate Judge